

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

September 9, 2019

<u>BY ECF</u>
The Honorable Vincent L. Briccetti
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

>      Re:      *United States* v. *Christopher Shelp*, 18 Cr. 585 (VB)

Dear Judge Briccetti:

The Government respectfully submits this letter in advance of the sentencing of the defendant, Christopher Shelp.  As set forth in the Presentence Investigation Report (hereinafter, the "PSR"), the applicable Guidelines range is 33 to 41 months' imprisonment.  (PSR ¶ 105.)  The Probation Office recommends a sentence of 33 months' imprisonment.  (PSR at 21.)  For the reasons set forth below, the Government respectfully submits that a sentence within the Guidelines range of 33 to 41 months would be fair and appropriate in this case.

**A.      Background**

   **1.      The Offense Conduct**

From in or about 2016, up to and including in or about 2018, Christopher Shelp, a/k/a "Silence," participated in a conspiracy to distribute heroin in and around the area of Middletown, New York.  (PSR ¶¶ 15-16).  The conspiracy was supervised and managed by Shelp's coconspirator, John McGuigan.  (PSR ¶ 15).  McGuigan and another member of the conspiracy ("CC-1") supplied Shelp on a weekly basis with wholesale quantities of heroin, which Shelp would then resell to lower-level drug dealers and drug users in the Middletown area.  (PSR ¶¶ 16, 44).  McGuigan and CC-1 provided the heroin to Shelp on consignment, such that Shelp could fund his resupplies of heroin with the profits of his sales.  (PSR ¶ 44).  In addition, Shelp regularly helped McGuigan breakdown wholesale quantities of heroin and package it for redistribution at McGuigan's residence.  (PSR ¶¶ 18, 45).

During the investigation, law enforcement conducted 12 controlled purchases of heroin from Shelp.  (PSR ¶ 45).  In addition, during a wiretap of McGuigan's cellphone in October and November 2017, law enforcement intercepted numerous communications in which Shelp coordinated the purchase of heroin from McGuigan.  (PSR ¶ 45).

Shelp is personally responsible for the distribution of more than 100 but less than 400 grams of heroin during the conspiracy.  (PSR ¶ 46).

Shelp was charged in the above-referenced Indictment with conspiring to distribute one kilogram and more of heroin, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A).  On June 4, 2019, the defendant pled guilty, pursuant to a plea agreement, to the lesser-included offense of participating in a conspiracy to sell 100 grams and more of heroin, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(B).

## 2.        The Plea Agreement and the Applicable Guidelines Range

The plea agreement between the defendant and the Government sets forth the calculation of the appropriate offense level under the United States Sentencing Guidelines.  Based on the quantity of heroin involved in the offense, the base offense level is 24.  (PSR ¶ 5).  A two-level reduction applies because the defendant meets the criteria set forth in the First Step Act, 132 Stat. 5194, and U.S.S.G. § 5C1.2 for imposition of a sentence in accordance with the applicable guidelines, without regard to any statutory minimum sentence.  (PSR ¶ 5).  In addition, the defendant is entitled to a further three-level downward adjustment for acceptance of responsibility, resulting in a total offense level of 19.  (PSR ¶ 5).  The defendant is in criminal history category II, with a resulting Guidelines range of 33 to 41 months' imprisonment.  (PSR ¶ 5).

Probation calculated the same Guidelines range as the plea agreement and recommended a sentence of 33 months' imprisonment.  (PSR ¶¶ 51-61, 63-66, 105; PSR at 21).

## B.    Discussion

## 1.        Applicable Law

The Guidelines are no longer mandatory, but they still provide important guidance to the Court following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005).  "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark."  *Gall* v. *United States*, 552 U.S. 38, 49 (2007).  The Guidelines range is thus "the lodestar" that "'anchor[s]'" the district court's discretion.  *Molina-Martinez* v. *United States*, 136 S. Ct. 1338, 1345-46 (2016) (quoting *Peugh* v. *United States*, 133 S. Ct. 2072, 2087 (2013)).

After making the initial Guidelines calculation, a sentencing judge must consider the factors outlined in Title 18, United States Code, Section 3553(a), and "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing outlined in 18 U.S.C. § 3553(a)(2).  To the extent a district court imposes a sentence outside the range recommended by the Guidelines, it must "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'"  *United States* v. *Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (quoting *Gall*, 552 U.S. at 50).

## 2.        A Guidelines Sentence Is Fair and Appropriate in This Case

The Government respectfully submits that a sentence within the Guidelines range of 33 to 41 months' imprisonment would be sufficient, but not greater than necessary, to achieve the legitimate purposes of sentencing.  In particular, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to promote respect for the law, protect

the public from future crimes of the defendant, and assure adequate deterrence all justify such a sentence.

From 2016, up to and including 2018, the defendant participated in a conspiracy to distribute heroin, in which he personally sold hundreds of grams of heroin—amounting to thousands of individual glassine bags—to drug dealers and addicts in his community. The defendant's heroin distribution activities were not casual or intermittent. Rather, over an approximately two-year period, the defendant received resale quantities of heroin on a weekly basis from McGuigan and CC-1, which he paid for using the profits from his sales to customers. The scope of the defendant's activities is reflected in the 12 controlled purchases of heroin that law enforcement conducted from the defendant, as well as the regularity with which the defendant was intercepted on the wiretap of McGuigan's cellphone seeking to purchase heroin from him.

Unlike his codefendants, the defendant was himself addicted to heroin for at least a portion of the conspiracy. (PSR ¶¶ 88-89). Although the defendant's heroin addiction in no way excuses his conduct, it does provide important context for his behavior during at least part of the conspiracy. It is troubling, however, that the defendant chose to distribute heroin, and to thereby profit off the addiction and suffering of others, despite experiencing the drug's soul-crushing effects firsthand.

The defendant's history and characteristics, combined with his offense conduct, further counsel in favor of a Guidelines sentence. The defendant was unable to identify with any specificity the time periods during which he was lawfully employed prior to 2018, and he has a scant track record of legitimate work.  (PSR ¶¶ 96-99). Despite the fact that he is 25 years old, moreover, the defendant has not managed to earn a GED. (PSR ¶ 95). In addition, the defendant has a prior conviction from 2016 for criminal possession of a firearm, and he was on conditional discharge at the time of the instant offense. (PSR ¶ 63). The defendant's prior conviction should have served as a wake-up call to get his life on the right track; instead, the defendant chose to involve himself in a significant heroin distribution operation.

In his sentencing submission, the defendant suggests that increases in the length of sentences have no deterrent impact on either an individual defendant or the general public, and that it is the existence of the criminal justice system in general—rather than the threat of any specific sentence—that deters crime. (Def. Mem. at 10 ("The general research finding is that 'deterrence works,' in the sense that there is less crime with a criminal justice system tha[n] there would be without one. But . . . there is no evidence that increases in sentence length reduces crime through deterrence.")).  Assuming for the sake of argument that the defendant's assertions regarding deterrence are true, his contention overlooks the fact that the existence of the criminal justice system has deterrent force only if it carries meaningful consequences for serious criminal activity.  Put differently, even if the marginal deterrence of particular sentences cannot be measured, the existence of the criminal justice system would not reduce crime at all if it did not reliably attach serious consequences to convictions in general.

As a result, even if the defendant's sentence in this case cannot be shown to have a quantifiable deterrent impact on either the defendant or the general public, it forms part of an aggregate body of consequences for drug trafficking activity, the result of which is that "deterrence works." (Def. Mem. at 10).  In other words, if meaningful sentences of incarceration and

supervision did not result from convictions for serious drug trafficking offenses, the criminal justice system would presumably stop exerting any deterrent force at all with respect to those crimes.

Assuring adequate deterrence, moreover, is just one of several purposes of sentencing, which also include the need to impose a sentence that reflects the seriousness of the offense, ensure just punishment, and promote respect for the law.  In this case, the Government shares Probation's view that although the defendant's drug use may have motivated, in part,  his participation in the instant conspiracy, it does not "rise[] to the level to warrant a variance from the contemplated guidelines range." (PSR at 22).  This is especially true where, as here, the defendant was initially charged with an offense carrying a 10-year mandatory minimum sentence; was given the opportunity to plead to a lesser-included offense; and now faces no mandatory minimum whatsoever.  That break is sufficient to account for the limited mitigating force of the defendant's heroin addiction.

In addition, a Guidelines sentence would avoid unwarranted sentencing disparities with the other defendants in this case, who thus far have received sentences of between 66 and 84 months' imprisonment.  (PSR ¶¶ 8-9, 11-12).  The defendant's lower Guidelines range appropriately reflects his lower criminal history category and attendant safety-valve eligibility, as well as the fact that the defendant did not possess a firearm in connection with his drug trafficking, unlike several of his codefendants.  In the Government's view, however, the defendant's criminal conduct is sufficiently similar to that of his codefendants, such that a sentence below the applicable Guideline range would result in an unwarranted sentencing disparity that cannot be justified on the basis of any of his personal circumstances.

In light of the serious nature of the defendant's crime, the importance of assuring adequate deterrence, the need to avoid unwarranted sentencing disparities, and the need to promote respect for the law, the Government respectfully submits that a Guidelines sentence is warranted.

**C.      Conclusion**

For the reasons set forth above, a sentence within the Guidelines range of 33 to 41 months'
imprisonment would be sufficient, but not greater than necessary, to achieve the legitimate
purposes of sentencing.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By:      /s/  Gillian Grossman
         Gillian Grossman
         Assistant United States Attorney
         (212) 637-2188

cc:      Lawrence Sheehan, Esq. (by ECF)